**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARK STRUK,<br><br>　　　　　　　　　　Plaintiff,<br>　　vs.<br><br>MICHAEL BUSH; et al.,<br><br>　　　　　　　　　　Defendants. | CASE NO. 10 CV 0348 MMA (POR)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. No. 25] |

  Currently pending before the Court is Defendant Michael Bush's motion for summary judgment. [Doc. No. 25] Plaintiff filed an opposition on June 3, 2011 [Doc. No. 29] and Defendant filed a reply on June 15 [Doc. No. 32]. On July 11, 2011, the Court determined the matter suitable for decision on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1). [Doc. No. 34.] For the reasons set forth below, the Court **GRANTS** Defendant's motion for summary judgment.

### BACKGROUND

  The following facts are not reasonably in dispute.[1] At approximately 12:30 a.m. on January 4, 2009, Plaintiff Mark Struk was driving northbound on Interstate 5 near Solana Beach with his friend Elizabeth Roberts. [*Pl.'s Oppo. to Def.'s MSJ*, Doc. No. 29, p.1.] Traffic began to

---

[1] Defendant did not submit a separate statement of undisputed material facts in support of his motion for summary judgment as required by the undersigned's chambers Rule I. The facts cited herein are taken from Defendant's moving papers and Plaintiff's opposition, and construed in the light most favorable to Plaintiff. *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007).

1  slow, and ultimately came to a stop, because five lanes of traffic were merging into two lanes due
2  to a fatal hit-and-run vehicle collision on the northbound side of the freeway.  [*Id.*; *Def.'s MSJ*,
3  Doc. No. 25-1, p.1-2.]  As Plaintiff approached the scene of the collision, his passenger Ms.
4  Roberts saw a purse among the debris on the ground and she got out of the car to retrieve it.  [Doc.
5  No. 29, p.1.]  Shortly after getting back in the car, Plaintiff saw a man near the damaged vehicle
6  and dropped the purse to the ground near the man, assuming he was involved in the collision.  [*Id.*]

7      Two independent witnesses saw Ms. Roberts retrieve the purse and get back in the car.
8  These witnesses contacted the California Highway Patrol ("CHP") to report that someone had
9  taken a purse from the collision scene.  [Doc. No. 25-1, p.2.]  Both witnesses reported they saw a
10 female get out of a dark-colored Subaru wagon with California license plate 6BUU546, take the
11 purse from the roadway, and get back into the vehicle.  [*Id.* at p.2-3.]  According to both witnesses,
12 the car continued driving northbound, and neither witness saw Plaintiff give the purse to a man
13 standing on the side of the road.  [*Id.*; *see* Doc. No. 29, Exh. 4 at 111:22-25.]  One witness, Stacey
14 Prida, described the female who exited the vehicle as being approximately 25-30 years old, White
15 or light-skinned Hispanic, with dark hair.  [Doc. No. 25-1, p.3.]  Ms. Prida did not provide a
16 description of the vehicle's driver.  [*Id.*]  The second witness, Mike Stenzel, "provided a general
17 description of the female passenger and of the male driver, whom he believed was Caucasian and
18 taller than the female."  [*Id.*]

19     The hit-and-run collision killed Yines Gonzalez and her unborn fetus.  At the scene, Yines'
20 husband reported that his wife's purse could not be found.  Defendant Michael Bush, an
21 investigator with the CHP, is one of the officers assigned to assist in the investigation of the fatal
22 collision and suspected theft.  [*Id.* at p.1.]  Investigator Bush was informed about the two witnesses
23 who reported seeing a female take a purse off the roadway near the collision, and that the victim's
24 husband had reported his wife's purse was missing.  [*Id.* at p.2.]  Investigator Bush learned that
25 Mr. Gonzalez indicated his wife's purse contained several important documents, including a
26 passport and other identifying documents, as well as credit cards and approximately $500 in cash.
27 [*Id.*]  Investigator Bush reviewed the two eyewitness reports and called them to discuss what they
28 saw the night of the collision; both witnesses verified the information in their respective reports to

1  the CHP. [Doc. No. 25-1, p.2; Doc. No. 29, Exh. 4 at 53:11-54:25, 7:3-21.] Defendant did not
2  place a follow-up call to Mr. Gonzalez because he had already returned to Mexico. [Doc. No. 29,
3  Exh. 4 at 44:3-12.]

4        On January 4, Investigator Bush conducted a vehicle registration search for the license
5  plate number provided by the eyewitnesses. [Doc. No. 25-1, p.2.] The search revealed California
6  license plate number 6BUU546 was owned by Plaintiff, whose date of birth is June 10, 1977. [*Id*.]
7  Investigator Bush determined that the vehicle was registered to an address in Carlsbad, which was
8  also listed as Plaintiff's address. [*Id*.] After performing additional searches, Investigator Bush
9  learned that a female named Donna Tamblyn, with a date of birth of October 24, 1973, resided at
10 the address in Carlsbad with Plaintiff. [*Id*.] On January 5, Investigator Bush traveled to Carlsbad
11 to verify the address he obtained for Plaintiff and Ms. Tamblyn, and that the two individuals
12 resided there. [*Id*. at p.3.] Defendant determined Ms. Tamblyn matched the general description of
13 the female passenger provided by the witnesses. Investigator Bush then "planned a surveillance
14 operation on the residence for the following day . . . to locate and detain Plaintiff and [Ms.]
15 Tamblyn and seize the Subaru." [*Id*.]

16       On January 6, Investigator Bush met with other CHP investigators and members of the San
17 Diego County District Attorney's Office involved in the investigation. [*Id*.] Investigator Bush
18 briefed those at the meeting "on the facts then known by the CHP and the intended follow-up
19 investigation regarding the missing purse, including the plan to locate and arrest Plaintiff and
20 [Ms.] Tamblyn. Everyone was in agreement." [*Id*.] Later that day, Investigator Bush's team set
21 up surveillance at the Carlsbad residence while Bush secured a search warrant. [*Id*. at p.4.]
22 Within a few hours Investigator Bush and his team arrested Plaintiff and Ms. Tamblyn; Defendant
23 did not have an arrest warrant for either individual. [*Id*.] After questioning Ms. Tamblyn at the
24 CHP office, it was determined she was not involved in the alleged theft and she was released. [*Id*.]
25       Conversely, at Investigator Bush's instruction, Investigator Jio arrested Plaintiff outside of
26 a market for grand theft, and transported him to the Oceanside Area Office to speak with
27 Investigator Bush. [*Id*. at p.4-5.] Although Plaintiff recounted the events of January 4 and
28 informed Investigator Bush that he had given the purse to a man at the collision scene, Plaintiff

was not released, and he was eventually taken to the Vista Detention Facility and booked. [*Id*. at p.5; Doc. No. 29, p.2.] Plaintiff was fingerprinted, photographed, searched and held in the County jail until he posted bail. [Doc. No. 29, p.2.] Plaintiff later learned that Investigator Bush had successfully obtained a search warrant for his Carlsbad residence and Subaru after Plaintiff's arrest, but nothing was found. [*Id*. at p.2-3.]

Ultimately, Investigator Bush corroborated Plaintiff's story and located the missing purse in the victim's damaged vehicle, which was described as a "woman's wallet" on the vehicle inventory form. [*Id*. at p.3.] A Superior Court Judge declared Plaintiff factually innocent of the charges brought against him, and Plaintiff initiated the pending action against several defendants alleging claims for: (1) unlawful seizure in violation of his Fourth Amendment rights under 42 U.S.C. section 1983; (2) negligence; (3) false arrest; (4) and violations of his civil rights under California Civil Code section 52.1. [Doc. No. 14.] Defendant Bush moves for summary judgment in his favor as to all four claims on the ground that probable cause existed to arrest Plaintiff, and even if it did not, Defendant Bush is immune from liability. [Doc. No. 25-1.][2]

### **LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 56, a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hubbard v. 7-Eleven*, 433 F. Supp. 2d 1134, 1139 (S.D. Cal. 2006) (citing former Fed. R. Civ. P. 56(c)(2)). It is beyond dispute that "[t]he moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact." *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007) (citation omitted). "Once the moving party meets its initial burden, . . . the burden shifts to the nonmoving party to set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a

---

[2] Investigator Bush is the only remaining named defendant in this action. Both Defendant M. Kelly and S. Jio have been dismissed. [Doc. Nos. 23, 26.] Although R. Sullivan is named in the First Amended Complaint, the docket reflects Defendant Sullivan has not been served, and has made no appearance in this action.

1  genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal
2  quotation marks and citations omitted).
3        A mere scintilla of evidence is not sufficient "to defeat a properly supported motion for
4  summary judgment; instead, the nonmoving party must introduce some 'significant probative
5  evidence tending to support the complaint.'" *Fazio v. City & County of San Francisco*, 125 F.3d
6  1328, 1331 (9th Cir. 1997) (quoting *Anderson*, 477 U.S. at 249, 252). Thus, in opposing a
7  summary judgment motion it is not enough to simply show that there is some metaphysical doubt
8  as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586
9  (1986) (citations omitted). However, when assessing the record to determine whether there is a
10 "genuine issue for trial," the court must "view the evidence in the light most favorable to the
11 nonmoving party, drawing all reasonable inferences in his favor." *Horphag*, 475 F.3d at 1035
12 (citation omitted). On summary judgment, the Court may not make credibility determinations; nor
13 may it weigh conflicting evidence. *See Anderson*, 477 U.S. at 255. Thus, as framed by the
14 Supreme Court, the ultimate question on a summary judgment motion is whether the evidence
15 "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided
16 that one party must prevail as a matter of law." *Id.* at 251-52.

## DISCUSSION

**I.  FALSE ARREST IN VIOLATION OF THE FOURTH AMENDMENT**

19       Plaintiff's first cause of action alleges Defendant Bush infringed Plaintiff's Fourth
20 Amendment right to be free from unreasonable seizures when Defendant falsely arrested Plaintiff
21 for grand theft in violation of California Penal Code section 487(a).[3] "Whether plaintiff's right to
22 be free from unreasonable search and seiz[ure] under the Fourth Amendment was violated hinges
23 on the validity of h[is] arrest. The validity of the arrest, in turn, depends on whether, at the time of
24 the arrest," Defendant Bush had probable cause to make the warrantless arrest. *Weinstein v. City*

---

[3] Under California Penal Code section 484(a), "[e]very person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, . . . is guilty of theft." At the time of Plaintiff's arrest in 2009, a theft constituted grand theft "[w]hen the money, labor, or real or personal property taken is of a value exceeding four hundred dollars ($400)." Cal. Pen. Code § 487(a) (2009). The 2010 amendment to section 487(a) increased the minimum value for grand theft to nine hundred fifty dollars ($950). *See* Cal. Penal Code § 487(a) (2011).

- 5 -                                                                                                10cv348

*of Eugene*, 2007 U.S. Dist. LEXIS 56554 *6 (D.C. Or. Aug. 1, 2007) *aff'd* 337 Fed. Appx 700 (9th Cir. 2009); *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (Fourth Amendment requires an officer have probable cause to make a warrantless arrest).

Investigator Bush moves for summary judgment on the ground that he had probable cause to arrest Plaintiff for the suspected theft of the victim's purse. Defendant further contends that even if he lacked probable cause, he is entitled to qualified immunity. Plaintiff argues summary judgment is improper, however, because there are disputed issues of material fact from which a jury could reasonably conclude Investigator Bush lacked probable cause, and Defendant is not entitled to immunity because he violated Plaintiff's clearly establish constitutional right to be free from unreasonable seizures. The Court considers each argument in turn.

### (A) PROBABLE CAUSE

The Fourth Amendment prohibits warrantless arrests absent probable cause. *Michigan v. Summers*, 452 U.S. 692, 700 (1981). The government therefore bears the burden of demonstrating a warrantless arrest did not violate the Fourth Amendment because the officers had probable cause to effect the arrest. *United States v. Newman*, 265 F. Supp. 2d 1100, 1106 (D. Ariz. 2003) (citation omitted). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *Lopez*, 482 F.3d at 1072 (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Stated another way, if "under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that the [suspect] had committed a crime," probable cause exists to make a warrantless arrest. *Id*. (internal marks and citation omitted). Probable cause must be present based on the "facts and circumstances known to the officers *at the moment of the arrest*." *Newman*, 265 F. Supp. 2d at 1106 (emphasis in original) (citing *United States v. Delgadillo-Velasquez*, 856 F.2d 1292, 1296 (9th Cir. 1998)).[4] "While conclusive evidence of guilt is not necessary to establish probable cause,

---

[4] The Court is prohibited from considering events that occurred after Plaintiff's arrest. *See Oxborrow v. City of Coalinga*, 559 F. Supp. 2d 1072, 1081-82 (E.D. Cal. 2008) ("The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest.").

mere suspicion, common rumor, or even strong reason to suspect are not enough." *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1024 (9th Cir. 2009) (internal marks and citations omitted). In addition, in cases such as this where "specific intent is a required element of the offense, the arresting officer must have probable cause for that element in order to reasonably believe that a crime has occurred." *Lopez*, 482 F.3d at 1073 (citation omitted); *People v. Hunter*, 147 Cal. App. 2d 472, 509 (1957) ("[t]he crime of grand theft is complete when a man takes property not his own with the intent to take it").

Plaintiff argues summary judgment is improper because a reasonable jury could conclude probable cause did not exist. However, Plaintiff does not identify any material facts in dispute and the record demonstrates the facts underlying Plaintiff's arrest are not reasonably in dispute. [*Compare* Doc. No. 25-1, p.8-10 *with* Doc. No. 29, p.4-5, 8.] Thus, while the issue of probable cause may go to a jury when there are disputed issues of material fact regarding "the facts and circumstances within an officer's knowledge or what the officer did or failed to do," that is not the case here. *Hopkins v. Bonvicino*, 573 F.3d 752 (9th Cir. 2009) (internal marks and citation omitted).[5] When, as here, the information known to the arresting officer at the time of the arrest is not in dispute, the determination as to "whether a reasonable officer would believe that he . . . had probable cause is a question of law. . . ." *Acosta v. City of Costa Mesa*, 2008 U.S. Dist. LEXIS 100412 *31-32 (C.D. Cal. Dec. 2, 2008) (citing *Hunter v. Bryant*, 502 U.S. 224, 227-28 (1991)). Accordingly, the issue of probable cause does not go to the jury as Plaintiff suggests, and the Court must determine, as a matter of law, whether the undisputed facts known to Defendant Bush at the time of the arrest created probable cause to arrest Plaintiff for grand theft. [*See* Doc. No. 29, p.8; *see also*, Doc. No. 29, Exh. 4 at 92:18-93:20, 94:7-19, 95:1-5; *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993).]

At the time of the arrest, Defendant Bush knew the following. Two independent eyewitnesses contacted the CHP the night of the collision to report that as traffic came to a stop

---

[5] Plaintiff's reliance on *Torres v. City of Los Angeles*, 548 F.3d 1197, 1208 (9th Cir. 2008) is unavailing. In *Torres*, the defendant officers filed a motion for judgment as a matter of law *after* a jury trial, which required the district court to "determine whether a reasonable jury could have concluded the [officers] lacked probable case to arrest Torres." *Torres* is of little assistance here, where the issue has not yet been deemed appropriate for submission to a jury.

near the collision on Interstate 5, a female passenger exited a dark-colored Subaru wagon with California license plate 6BUU546. Both witnesses independently reported they observed the female passenger take a purse from the collision scene, get back into the vehicle, and continue driving northbound. Neither witness saw anyone in the Subaru give the purse to a man standing on the side of the roadway. Both witnesses provided a general description of the female; the second witness, Mr. Stenzel, provided a general description of the male driver. At the scene, the victim's husband Mr. Gonzalez reported his wife's purse missing, and stated that it contained several important documents, as well as credit cards and approximately $500 in cash. A registration search revealed Plaintiff Mark Struk, date of birth June 10, 1977, owned the vehicle associated with the license plate number reported by the eyewitnesses. In addition, the vehicle was registered to the same address on La Costa Avenue in Carlsbad that was listed as Plaintiff's residence. Additional searches revealed a female named Donna Tamblyn, date of birth October 24, 1973, also resided at the Carlsbad address. When Defendant Bush met with members of the District Attorney's Office and informed them about the information he had and his intention to locate and arrest Plaintiff and Ms. Tamblyn for stealing the victim's purse, no one at the meeting objected.[6]

As discussed more fully below, given the totality of the circumstances known to Investigator Bush at the time of Plaintiff's arrest, the Court concludes probable cause existed because "a prudent person would have concluded that there was a fair probability" Plaintiff had committed grand theft. *Lopez*, 482 F.3d at 1072 (citation omitted). Defendant Bush had information from multiple independent sources that each suggested Plaintiff was the driver of the vehicle seen leaving the collision after a female passenger retrieved a purse from the freeway. Plaintiff, however, argues the evidence Defendant possessed at the time of his arrest was insufficient to create probable cause for three primary reasons.

---

[6] Although consultation with the District Attorney does "not automatically insulate an officer from liability, it goes far to establish qualified immunity." *Ewing v. City of Stockton*, 588 F.3d 1218, 1231 (9th Cir. 2009) (internal marks and citation omitted). Here, Investigator Bush provided the information he had to the District Attorney, and the record indicates the District Attorney did not raise any questions or concerns about the adequacy of the evidence.

### 1. Probable Cause to Identify Plaintiff as the Driver of the Subaru

First, Plaintiff argues Defendant lacked adequate information to establish a reasonable probability that Plaintiff was the person driving the Subaru on the night of the collision. [Doc. No. 29, p.9.] Plaintiff asserts it is well-established that a general description of a potential suspect is insufficient to create probable cause for an arrest. [*Id*. (citing *Torres*, 548 F.3d at 1208).] Here, only one eyewitness described the driver as a Caucasian male, slightly taller than the female passenger. Similarly, Plaintiff argues "the fact that [Plaintiff] was the registered owner of the [Subaru] falls short of establishing a probability that he was driving the car at the time" of the events in question. [*Id.* (citing *Torres*, 548 F.3d at 1208.] These general propositions do not dissuade the Court from concluding Investigator Bush had probable cause to arrest Plaintiff.

Although, "mere resemblance to a general description is not enough to establish probable cause . . . it is permissible to consider a general physical description where it is found in combination with other particularized bases for suspicion." *Lopez*, 482 F.3d at 1073-74 (citations omitted). Here, Investigator Bush not only had a general description of the driver, he had records that indicated the Subaru was registered to Plaintiff, the registration address matched Plaintiff's residence, and he had reports from three independent individuals that suggested Plaintiff drove away with the victim's purse. Therefore, Defendant did not solely rely on a general description of the driver, nor the search results that identified Plaintiff as the Subaru's owner.

The Court is mindful that "[i]n dealing with probable cause, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act." *Motley v. Parks*, 432 F.3d 1072, 1082 (9th Cir. 2005) (citing, *inter alia*, *Illinois v. Rodriguez*, 497 U.S. 177, 175 (1990) ("Probable cause . . . demands no more than a proper assessment of probabilities in particular factual contexts.")). "While the existence of probable cause necessarily turns upon the particular facts of the individual case, and prior decisions generally are of little help in deciding a specific case," the Court finds Investigator Bush had sufficient evidence to permit a reasonable officer to conclude there was a fair probability that Plaintiff drove away with the victim's purse and intended to deprive her of it permanently. *Ramirez,* 560 F.3d at 1024; *see also Lopez*, 482

1  F.3d at 1072. Two witnesses saw Plaintiff's car leave after a female passenger retrieved a purse
2  from the freeway. *See Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009) (citizen
3  witnesses, as opposed to informants, are generally presumed to be reliable) (citing *United States v.*
4  *Banks*, 539 F.2d 14, 17 (9th Cir. 1976)). The victim's husband also independently reported his
5  wife's purse missing. These consistent independent reports, coupled with the database search
6  results and the absence of any information to create doubt Plaintiff was the driver of the Subaru on
7  the night in question, created probable cause to arrest Plaintiff for grant theft. *See Barnett v.*
8  *Martinez*, 2011 U.S. Dist. LEXIS 68063 *12 (N.D. Cal. June 24, 2011) (on summary judgment
9  plaintiff failed to identify any facts ignored by the officers that suggested plaintiff did not commit
10 the crime).[7]

   **2.    Intent to Take Victim's Purse**

12 Next, Plaintiff contends Defendant Bush lacked probable cause to arrest him because
13 specific intent is required to establish grand theft, and Defendant had no information that the driver
14 of the vehicle intended to permanently deprive the owner of the purse. [Doc. No. 29, p.11-12.]
15 Plaintiff asserts it was unreasonable for Defendant to assume that an individual who retrieves a
16 purse from a lane on the freeway intends to steal it. Plaintiff contends it is just as likely that a
17 person who takes a purse out of harm's way is acting as a good Samaritan who intends to later
18 return the item to its rightful owner. The Court disagrees.

19 "The test is not whether the conduct under question is consistent with innocent behavior;
20 law enforcement officers do not have to rule out the possibility of innocent behavior." *Ramirez*,
21 560 F.3d at 1024 (citation omitted). Although officers "may not disregard facts tending to

---

[7] In support of his opposition, Plaintiff offers an expert report from Jack Smith, in which Mr. Smith opines "Officer Bush did not have probable cause to arrest Mr. Struk." [Doc. No. 29-1, Exh. 2, ¶9.] Defendant does not challenge Mr. Smith's qualifications as an expert, but objects to the majority of Mr. Smith's declaration on the ground that it contains impermissible legal conclusions. The Court agrees. "Courts regularly prohibit experts from testifying on the ultimate issue of whether there was probable cause for an arrest." *Hao-Qi Gong v. Jones*, 2008 U.S. Dist. LEXIS 111178 *12-13 (N.D. Cal. Sept. 9, 2008) (collecting cases). Although an expert may testify regarding relevant practices and procedures, he may not offer an opinion on the ultimate legal issue of whether probable cause existed in the case before the Court. Accordingly, although the Court does not address Defendant's objections individually, the Court **SUSTAINS** Defendant's objections to Mr. Smith's declaration to the extent he opines that Defendant lacked probable cause to arrest Plaintiff. Defendant's objections are otherwise **OVERRULED**, including Defendant's objections to Plaintiff's declaration.

1  dissipate probable cause," there is no indication Defendant Bush ignored any facts that would have
2  affected the probable cause analysis. At the time of Plaintiff's arrest, Defendant had no
3  information to indicate the purse had been returned, nor that the individuals who reportedly drove
4  off with the purse intended to return it to the lawful owner. All of the information that eventually
5  collaborated Plaintiff's story was discovered after Plaintiff's arrest, and is therefore, irrelevant to
6  the Court's probable cause analysis. *John v. City of El Monte*, 515 F.3d 936, 940 (9th Cir. 2008)
7  ("It is essential to avoid hindsight analysis, i.e., to consider additional facts that became known
8  only after the arrest was made.") (citation omitted). Accordingly, although there was an innocent
9  explanation for Plaintiff's behavior, it was not improper for Defendant to infer that Plaintiff
10 intended to keep the victim's purse after reportedly driving off with it.

### 3. Adequacy of Investigation

12 Third, Plaintiff argues Defendant did not conduct a proper investigation, primarily, because
13 he failed to contact the victim's husband to question him about the missing purse, he did not
14 attempt to question Plaintiff before arresting him, and he did not obtain a copy of the vehicle
15 inventory list that was created when the victim's car was impounded. [Doc. No. 29, p.12-13.]
16 Plaintiff's argument lacks merit for several reasons.

17 As an initial matter, Plaintiff's reliance on *Hopkins v. Bonvicino*, 573 F.3d 752 (9th Cir.
18 2009) is unavailing. Plaintiff argues that Defendant's investigation was inadequate because under
19 *Hopkins*, an officer must not rely solely on the statement of a witness, but must independently
20 investigate the basis of the witness's knowledge or interview other witnesses. *Hopkins* is,
21 however, factually distinguishable because the defendant officers in *Hopkins* arrested the plaintiff
22 based only on a single witness's statement that she was the victim of a drunk driving hit-and-run
23 traffic collision. *Id*. at 767. Two officers broke into plaintiff's home without a warrant, and
24 without probable cause. "All that they had was a statement from a third-party that [plaintiff] had
25 been involved in an extremely minor traffic incident, an incident so minor that it did not cause as
26 much as a scratch on either of the vehicles involved, and that he appeared to have been drinking.
27 Based on this information, the officers broke into [plaintiff's] home with their flashlights shining
28 and their guns drawn. When they found [plaintiff], they handcuffed him, removed him from his

house, and placed him under arrest." *Id*. at 759. The officers' conduct in *Hopkins* is a far cry from the facts in this case.

In *Hopkins*, the Ninth Circuit Court of Appeals held that, "in establishing probable cause, officers may not solely rely on the claim of a citizen witness that she was a victim of a crime, but must independently investigate the basis of the witness'[s] knowledge *or interview other witnesses*." *Id*. at 767 (emphasis added). Here, Defendant Bush's actions are consistent with the requirements of *Hopkins*, as Investigator Bush did not rely solely on the husband's statement that his wife's purse was missing. Defendant obtained police reports from two additional independent eyewitnesses that corroborated the husband's statement, and he contacted both witnesses to verify the accuracy of their reports which indicated a Subaru left the scene after a female passenger retrieved a purse from the freeway. Plaintiff's argument that Defendant should have contacted the victim's husband to follow-up on his statement that the missing purse contained approximately $500 is unpersuasive. The victim's husband reported his wife's purse missing at the scene, and provided a list of its contents that the officers had no reason to question. Similarly, the Court is not persuaded by Plaintiff's argument that Defendant unreasonably failed to contact "any witness at the scene to ask about the purse." [Doc. No. 29, p.13.] Investigator Bush contacted two witnesses from the scene who reported the purse missing. Their statements were consistent with one another, and they corroborated the husband's statement provided to police. Although Investigator Bush could have investigated further prior to arresting Plaintiff, the inquiry is not what he could have done. Rather, the question is whether the investigation Defendant did conduct prior to the arrest was sufficient to create probable cause.

Even if a defendant could have investigated further but did not do so before arresting a plaintiff, that does not vitiate probable cause. *Barnett*, 2011 U.S. Dist. LEXIS at *12 (citing *John v. City of El Monte*, 515 F.3d 936, 941-42 (9th Cir. 2008)). "It is unreasonable to expect officers to pursue all possible avenues of investigation before making an arrest. Ordinarily, once the elements of a crime have been established, there is no further duty to continue investigating." *Knotts v. Carreira*, 2011 U.S. Dist. LEXIS 72877 *17 (N.D. Cal. July 7, 2011) (citation omitted); *Ewing*, 588 F.3d at 1227 ("Once he has probable cause, an officer is not ordinarily required to

1  continue to investigate or seek further corroboration."). The Court therefore finds it immaterial
2  that Investigator Bush did not obtain a copy of the vehicle inventory list prior to Plaintiff's arrest.
3  Probable cause existed without the information contained in the inventory list. Morever, the list
4  indicated a women's wallet was found in the vehicle, but did not mention a purse. Because three
5  people reported a purse missing, the identification of a woman's wallet would not have dissipated
6  Investigator Bush's probable cause. Accordingly, for the reasons stated above, the Court
7  concludes Defendant Bush had probable cause to arrest Plaintiff for grand theft, and therefore
8  Plaintiff's first cause of action for false arrest under 42 U.S.C. section 1983 fails as a matter of
9  law.

### (B) Qualified Immunity

Defendant Bush alternatively argues that even if probable cause did not exist to arrest Plaintiff, his first claim must still be dismissed because Defendant is immune from liability. "Government officials performing discretionary functions are entitled to qualified immunity from damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442-43 (9th Cir. 1991) (citations omitted). In limited circumstances, an officer may be entitled to qualified immunity even if he erroneously arrests an individual without probable cause. *Id*. at 1443. For example, "qualified immunity is available if a reasonable police officer could have believed that his . . . conduct was lawful, in light of the clearly established law and the information" possessed by the officer at the time of the arrest. *Id*.[8]

The Court conducts a two-step inquiry to determine whether an officer is entitled to qualified immunity. *Ramirez*, 560 F.3d at 1020 (court may conduct inquiry in any order it prefers). Under one prong, the Court considers whether "taken in the light most favorable to the [plaintiff], the facts alleged show the officer's conduct violated a constitutional right." *Id*. (internal marks omitted). If the answer is "no," the inquiry ends and judgment shall be entered in favor of the defendant, as the plaintiff cannot prevail. *Motley*, 432 F.3d at 1077. Because

---

[8] Where, as here, the underlying facts are not reasonably in dispute the Court may properly determine whether a defendant is entitled to qualified immunity in the context of a summary judgment motion. *Fuller*, 950 F.2d at 1443.

1  Defendant Bush had probable cause to arrest Plaintiff he did not violate Plaintiff's Fourth
2  Amendment rights. [*See*, *supra*, p.6-13.] Absent a constitutional violation, the Court's inquiry is
3  complete and Defendant is entitled to qualified immunity on Plaintiff's section 1983 claim.

4  However, even if the Court assumes probable cause did not exist, Defendant would
5  nevertheless be entitled to qualified immunity because under existing precedent a reasonable
6  officer in Investigator Bush's position would not have clearly known that his conduct was
7  unlawful under the circumstances. *See Hunter v. Bryant*, 502 U.S. 224, 229 (1991) ("qualified
8  immunity standard gives ample room for mistaken judgments by protecting all but the plainly
9  incompetent or those who knowingly violate the law"); *Ramirez*, 560 F.3d at 1020 (facts must
10 establish that "it would be clear to a reasonable officer that his conduct was unlawful *in the*
11 *situation he confronted*") (emphasis added); *Fogel v. Collins*, 531 F.3d 824, 833 (9th Cir. 2008)
12 (although the court's inquiry is objective, it is highly fact-specific); *Oxborrow v. City of Coalinga*,
13 559 F. Supp. 2d 1072, 1085 (E.D. Cal. 2008) (qualified immunity exists if reasonable officer
14 would have believed probable cause existed under the circumstances presented). Plaintiff's first
15 cause of action therefore fails on this additional independent ground.

16 **II.    STATE LAW CLAIMS**

17 Plaintiff also alleges state-based causes of action against Defendant Bush for negligence,
18 false arrest, and damages under California Civil Code section 52.1. Defendant's qualified
19 immunity does not extend to Plaintiff's state-based claims. *Cousins v. Lockyer*, 568 F.3d 1063,
20 1072 (9th Cir. 2010). However, the Court finds each of Plaintiff's remaining claims fails as a
21 matter of law because Defendant had probable cause to arrest Plaintiff for grand theft, and
22 Defendant is otherwise immune under state law.

23 **(A)    NEGLIGENCE**

24 Plaintiff's second cause of action alleges Defendant was negligent and breached his duty of
25 due care owed to Plaintiff. [Doc. No. 14 ¶20.] Plaintiff does not, however, specify which of
26 Defendant's actions were purportedly negligent. As an initial matter, to the extent Plaintiff bases
27 his negligence claim on his arrest, the claim cannot survive summary judgment because Defendant
28 had probable cause to arrest him. [*See*, *supra*, p.6-13.] A finding of probable cause negates a

1  claim for negligence premised on the underlying arrest. *Bulfer v. Dobbins*, 2011 U.S. Dist. LEXIS
2  11358 *41 (S.D. Cal. Feb. 7, 2011) (citation omitted); *Salazar v. Upland Police Dep't*, 116 Cal.
3  App. 4th 586, 874 (2010) (concluding that summary judgment is appropriate on negligence claim
4  in the absence of a triable issue of fact with respect to probable cause).

5        To the extent Plaintiff attempts to state a claim for negligence based on Defendant's
6  investigation, or purported lack thereof, the claim fails as a matter of law because Defendant is
7  immune from liability under California Government Code section 821.6 for his investigatory
8  conduct. Section 826.1 immunizes officers for actions taken within the scope and course of their
9  employment in preparation for formal proceedings, including investigatory actions that resulted in
10 criminal charges. *Via v. City of Fairfield*, 2011 U.S. Dist. LEXIS 63242 *22-23 (E.D. Cal. June
11 13, 2011); Cal. Gov't Code § 821.6; *Johnson v. Pacifica*, 4 Cal. App. 3d 82, 83-84 (1970) (court
12 held police officers were statutorily immune under section 821.6 for negligently conducted
13 investigation). "Because investigation is an essential step toward the institution of formal
14 proceedings, it is [] cloaked with immunity." *Amylou R. v. County of Riverside*, 28 Cal. App. 4th
15 1205, 1210 (1994) (internal marks and citation omitted); *see also Javor v. Taggart*, 98 Cal. App.
16 4th 795, 809 (2002) ("To eliminate that fear of litigation and to prevent the officers from being
17 harassed in the performance of their duties, law enforcement officers are granted immunity from
18 civil liability, even for the malicious abuse of their power."). Here, Plaintiff does not assert any of
19 Defendant Bush's conduct falls outside the scope and course of his employment. He therefore
20 cannot state a viable claim for negligence premised on Defendant's allegedly faulty investigation.

21       Alternatively, to the extent Plaintiff intends to assert a negligence claim based on
22 Defendant's allegedly false statements to the media that portrayed Plaintiff "as one who had
23 committed the unconscionable act of stealing the purse of a pregnant woman who had been
24 tragically killed in a car accident," Plaintiff again fails to state a cognizable claim for relief. [*See*
25 Doc. No. 14 ¶11.] As indicated above, California Government Code section 821.6 immunizes an
26 officer's investigative conduct before judicial proceeding are initiated, even if the authorities later
27 decide not to pursue charges. *Gillan v. City of San Marino*, 147 Cal. App. 4th 1033, 1048 (2007)
28 (citations omitted). Therefore, "[a]cts undertaken in the course of an investigation, *including press*

*releases reporting the progress or results of the investigation*, cannot give rise to liability." *Id.* (emphasis added).

Here, Defendant Bush provides an unrebutted declaration that he had "no contact with the media in this case, and took no part in the dissemination of information relative to the investigation of the theft or Plaintiff's arrest." [Doc. No. 27-2 ¶17.] Yet even if the Court disregards his declaration, Defendant's alleged interaction with the media is immunized under section 821.6. Although Plaintiff alleges he was falsely portrayed to the media as having committed a heinous crime because Defendant conducted an improper and incomplete investigation, press releases to the media are generally protected conduct. Plaintiff does not identify any conduct that exceeds the scope of immunity under section 821.6. Accordingly, for the reasons discussed above, Plaintiff's second cause of action for negligence fails as a matter of law.

**(B) FALSE ARREST**

To state a claim for false arrest under California law Plaintiff must establish he was subject to a non-consensual, intentional confinement, without lawful privilege, for an appreciable period of time. *Tekle v. United States*, 511 F.3d 839, 854 (9th Cir. 2007) (citations omitted). California Penal Code section 847(b)(1) immunizes officers from liability for erroneous arrests where they had reasonable cause to believe the arrest was lawful. *Garcia v. County of Merced*, 639 F.3d 1206, 1213 (9th Cir. 2011) (citing Cal. Penal Code § 847(b)(1)). "Reasonable cause to arrest exists when the facts known to the arresting officer would lead a reasonable person to have a strong suspicion of the arrestee's guilt." *O'Toole v. Super. Ct.*, 140 Cal. App. 4th 488, 511 (2006) (citation omitted). Because the Court's inquiry is an objective one where the underlying facts are not in dispute, the determination of immunity under California Penal Code section 847(b)(1) is a question of law appropriately resolved on summary judgment. *Id.* (citation omitted).

Defendant argues Plaintiff's state-based false arrest claim must be dismissed with prejudice because Defendant had probable cause to arrest Plaintiff for grand theft. [Doc. No. 25-1, p.16.] The Court agrees. As set forth in detail above, the Court concludes Defendant Bush possessed adequate information to establish probable cause for Plaintiff's arrest. [*See*, *supra*, p.6-13.] Because Plaintiff's arrest was supported by probable cause it was not made "without lawful

privilege" and cannot support a false arrest claim. *See Garcia*, 639 F.3d at 1213. In addition, even if probable cause was lacking, Defendant would be immune from liability under California Penal Code section 847(b)(1) because the facts known at the time of Plaintiff's arrest would have led a reasonable person to strongly suspect Plaintiff committed grand theft. [*Id*.; *see, supra*, p.6-16.] Plaintiff's state-based false arrest claim therefore fails as a matter of law.

### (C) CALIFORNIA CIVIL CODE § 52.1

Lastly, Plaintiff asserts he is entitled to damages under California Civil Code section 52.1(b) because Defendant's allegedly unlawful arrest violated Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures, as well as his concomitant rights secured by the California constitution. [Doc. No. 14 ¶26.] "California Civil Code section 52.1 provides that anyone whose exercise or enjoyment of rights secured by the Constitution or laws of the U.S. has been interfered with or attempted to be interfered with by any person who engages in threats, intimidation, or coercion . . . may file a civil action for damages." *Mendez v. County of Alameda*, 2005 U.S. Dist. LEXIS 31921 *28-29 (N.D. Cal. Nov. 22, 2005) (internal marks omitted) (quoting Cal. Civ. Code §§ 52.1(a), (b)). Here, Plaintiff's section 52.1 claim is premised on his allegedly unlawful arrest. [Doc. No. 14, ¶26.] However, because the Court concludes Defendant had probable cause to arrest Plaintiff for grand theft, there is no violation of Plaintiff's constitutional rights. Absent an underlying constitutional violation Plaintiff's section 52.1 damages claim must fail. *See Bulfer*, 2011 U.S. Dist. LEXIS at *46; *see also Washburn v. Fagan*, 331 Fed. Appx. 490, 493-94 (9th Cir. 2009) (an arrest supported by probable cause does not interfere with an individual's "rights to liberty and freedom of movement.").

Alternatively, even if Defendant lacked probable cause to arrest Plaintiff, Plaintiff's section 52.1 claim still fails because the record is devoid of evidence that Defendant Bush used force, intimidation or coercion to effect Plaintiff's arrest. In *Gant v. County of Los Angeles*, 765 F. Supp. 2d 1238, 1253-54 (N.D. Cal. 2011), the District Court for the Northern District of California clarified, "that a wrongful arrest and detention, without more, cannot constitute 'force, intimidation, or coercion' for purposes of section 52.1." Absent evidence that the defendant used force, intimidation or coercion to effect an unlawful arrest, the plaintiff cannot state a section 52.1

1  civil damages claim. *Id*. at 1254.  Here, the undisputed facts demonstrate Plaintiff was cooperative
2  and he was arrested without incident. [Doc. No. 29, p.2]  Plaintiff's conclusory allegations in his
3  complaint to the contrary, alleging that the officers used threats, intimidation and coercion to
4  falsely arrest him, are not sufficient to survive summary judgment. [*See* Doc. No. 14, ¶26;
5  *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1019 (9th Cir. 2000) ("On a motion for
6  summary judgment, the non-moving party cannot simply rest on its allegations without any
7  significant probative evidence tending to support the complaint.").]  Accordingly, even assuming
8  Defendant lacked probable cause to arrest Plaintiff, the unlawfulness of the arrest alone, is
9  insufficient to state a claim for relief under section 52.1.  Because the record contains no indication
10 the officers used force, intimidation or coercion to effect Plaintiff's arrest, his section 52.1 claim
11 fails as a matter of law.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant Investigator Michael Bush's motion for summary judgment.  This order resolves all outstanding claims in this action.  The Clerk of Court is hereby instructed to terminate the case file and enter judgment in favor of Defendant Michael Bush and against Plaintiff Mark Struk.  The parties shall bear their own costs.

**IT IS SO ORDERED.**

DATED:  November 18, 2011

Hon. Michael M. Anello
United States District Judge